## MID-STATE TRUST III v.
### Johnny AVRIETT and Ida J. Avriett

CA 99-976                                                    17 S.W.3d 500

Court of Appeals of Arkansas
Division I
Opinion delivered May 24, 2000

*Depper Law Firm*, by: *Vicky Bussey Lowery*, for appellant.

*Gibson Law Office*, by: *Charles S. Gibson*, for appellees.

JOHN F. STROUD, JR., Judge. This is a foreclosure action in which appellant, Mid–State Trust III, sought judgment against the appellees, Johnny and Ida Avriett, on a promissory note and foreclosure of the mortgage securing the note. The chancellor found in favor of the appellees. Appellant's sole point of appeal is that the trial court erred in holding that it was not entitled to accelerate the debt. We disagree and affirm.

■ ■ In reviewing chancery cases, we will not set aside a chancellor's findings of fact unless they are clearly erroneous or clearly against the preponderance of the evidence. *Mid-State Trust II v. Jackson*, 42 Ark. App. 112, 854 S.W.2d 734 (1993). Moreover, principles of justice permit a court of equity to protect the debtor against an inequitable acceleration of the maturity of a debt. *Id.* In his decree, the chancellor found in pertinent part: 1) that appellees had complied with the terms of the mortgage by providing insurance in the amount of $20,000, and that consequently appellant's demand for reimbursement of premiums paid by it in excess of $20,000 had no contractual basis; and 2) that, therefore, appellant's conduct was inequitable in conditioning its acceptance of house payments upon an additional requirement that it be reimbursed for its premium costs. We find neither clear error in the chancellor's finding of fact with respect to the insurance coverage, nor an abuse of discretion in the chancellor's conclusion that it would be inequitable to allow foreclosure under the facts of this case.

In 1989, the appellees executed a promissory note and mortgage in connection with their purchase of a home from Jim Walter Homes, Inc. The sum of all payments under the note was $67,560, payable in 240 monthly installments of $281.50. However, the amount financed was $29,180. Through various assignments, appellant eventually became holder of the note and the lien securing it. The terms of the note provided in pertinent part that the holder had the right to declare the entire balance due and collectible if appellees failed to make a monthly payment for thirty days. In addition, appellees were required under the terms of the note to reimburse the note holder for any amounts it might have to advance in order to protect the property. Under the terms of the building contract and mortgage, the appellees agreed to maintain insurance on the property in an amount equal to the *lesser* of the actual cash value of the house or the unpaid balance of the cash price of the house. Finally, under the terms of the mortgage, appellees were to

deliver original insurance policies to the holder of the note. If appropriate insurance was not maintained, then the holder had the right, but not the obligation, to purchase coverage and add that cost to the appellees' indebtedness or demand reimbursement of that cost.

Appellee Ida Avriett testified that she knew that she and appellee Johnny Avriett were supposed to maintain insurance on the property. She also stated that "we were late on our July 1997 payment, . . . one payment late and half of another." She gave a representative of the company a check for $563, the amount of two payments, in July. She said that they made the next payment in August 1997; that she did not believe that they were behind at that point because the representative called her and told her they were caught up; and that they did not make a September payment, but sent two payments in October, a money order and a check. She said that those two payments were returned by a man who said they needed to pay "a whole bunch of money, $2,000 and something." She said she tore the check up and sent two more payments, which was three payments in all in October and November, but that the company sent them back to her.

She also testified that they did not have insurance with anyone from 1989, when they moved into the house, through 1990; that they got insurance in 1991 or 1992; and that the "insurance lady" told them $20,000 was as much coverage as they could get on the house. She said they had insurance on the house from 1992 to 1999, and at some point, the amount of coverage was increased to $27,000. She said that she assumed the insurance company would provide the appellant with copies of the policy, and that appellant never informed her that they weren't getting proof of her insurance.

Tom Emerson, a representative for appellant, testified that until trial he had not been aware that the appellees had insurance on the house. He stated that the payment received on August 28, 1997, was applied toward the July 15, 1997, installment; and that the amount expended by appellant for insurance was $2,064.87. He said that he had conflicting documentation, but that it appeared the appellees owed for August 1997 forward. With respect to the insurance purchased by appellant, Emerson's testimony and appellant's Exhibit 5 indicate that around 1993 the premiums paid by appellant dropped from over $200 to $140, and coverage dropped to $9,400.

Emerson stated that "[w]hen my company forces coverage on a piece of property that is uncovered, it would be for the amount financed, the cash price of the house, and at all times in this case, that is more than $9,400. I never understood until today that the Avrietts had coverage." Appellee Johnny Avriett testified that he did not think that at any time after the house was completed it was worth more than $20,000.

■■ In support of its point of appeal, appellant contends that the trial court was clearly erroneous in finding that the appellees' account "was placed in foreclosure . . . based on the claim for reimbursement of insurance premiums rather than the delinquency in the monthly payments." We find no such clear error. In returning the checks to the appellees, the company representative told them that they owed more than that amount, which was attributable to appellant's claim that the appellees owed for insurance premiums. Moreover, appellant contends alternatively that "[o]ne payment behind is still sufficient grounds for it to declare the entire balance due and payable pursuant to the promissory note and mortgage." Even if appellant's foreclosure action was based upon one delinquent payment, rather than the claim for insurance premiums, we find no abuse of discretion in the chancellor's determination that it would be inequitable to allow foreclosure under the facts of this case.

■ Appellant also contends that appellees' failure to obtain insurance coverage during the approximate two years immediately following the purchase of the property provided a sufficient basis for seeking foreclosure. We find no abuse of discretion in the chancellor's failure to allow such a basis for foreclosure. Under the facts of this case, it would clearly be inequitable to allow appellant to rely upon a claim that was so distant in time in order to claim default, accelerate payment, and foreclose upon the property.

■ Furthermore, appellant's contention that appellees did not provide adequate proof of insurance and notification of same to appellant for the remaining years, i.e., through 1999, is not convincing. In fact, appellant's own proof established that around 1993 the company-provided insurance on the house was reduced to approximately $9,400, which could be fairly inferred to show that they were aware of the $20,000 coverage purchased by appellees, and consequently purchased only the amount of insurance to bring

coverage to the amount financed, $29,180. In addition, the chancellor was not clearly erroneous in determining that $20,000 of coverage was sufficient under the terms of the parties' agreement. Again, under the terms of the building contract and mortgage, the appellees agreed to maintain insurance on the property in an amount equal to the *lesser* of the actual cash value of the house or the unpaid balance of the cash price of the house. Appellee Johnny Avriett testified that he did not consider the property to have a value of more than $20,000. Appellee Ida Avriett testified further that they were only able to procure coverage for $20,000 because their insurance agent did not consider the property to be worth more than that amount. Appellant presented no proof on this issue.

■ Finally, the chancellor extended the rights and duties of the parties with reference to the note for a period of twenty months past the original payoff date. Appellant asks this court, if it does not reverse, to remand this case for the chancellor to refashion the manner in which payments are made by the appellees. Appellant contends that appellees "have essentially been allowed to live in the home which is mortgaged and encumbered to [appellant] for 20 months during the pendency of this litigation without being required to make payments for those months." Appellant's argument in this regard is not persuasive as the twenty-month delay was actually attributable to appellant's premature attempt to accelerate the debt and foreclose on the mortgage.

Affirmed.

JENNINGS and GRIFFEN, JJ., agree.